Fourth case this morning, U.S. v. Foulks. Mr. Newland? Thank you, Your Honor. May it please the Court. Section 404a of the First Step Act asks one question. Did the Fair Sentencing Act of 2010 modify the statutory penalties for the offense of conviction? The answer in this case is yes. Romond Foulks was undisputably convicted of violating 21 U.S.C. 841a and At the time he was sentenced, that invoked a statutory mandatory minimum penalty of 10 years and the penalty range of 10 years to life. The Fair Sentencing Act of 2010, through Sections 2 and 3, modified the statutory penalties which applied to the offense of conviction for Mr. Foulks. As a result, the Court should hold that Mr. Foulks is in fact eligible to under the First Step Act and the Court has the authority, but the discretion, to impose a reduced sentence as if the Fair Sentencing Act had been in effect at the original time. So Mr. Newland, if we look at it as two steps, first step eligibility, second step exercise of discretion, Judge Mim in this case, as well as in the Greer case, did not get to that first step, correct? Did not make that eligibility determination or found him to be ineligible? That's correct, Your Honor. I'm not familiar with the Greer case, the particular facts, but that was the procedural posture of this case. But at the same time, as the government keeps trying to point out, and I will, to the Court's question that was asked in the prior argument, I do believe that the canon of the last antecedent as far as modifying the statutory penalties for which were modified should apply in this case in interpreting what it means to be a covered offense. So if we're looking to the statutory text, we're looking at a violation of a federal criminal statute, the statutory penalties for which were modified by the First Step Fair Sentencing Act of 2010, and it was committed before August 3, 2010. So the Fourth Circuit in Wersing actually applied that canon construction in saying that the plain meaning of the text means that you look at a categorical approach. In this case and in others, that would mean looking to the language of the indictment to see if the facts alleged include a cocaine-based violation of 21 U.S.C. 841 B1A or B1B. So I think that the statutory interpretation should be the starting and ending point for the Court in determining what eligibility turns on. At the same time, I think that what should also be kept in mind, and the Court should consider, as was pointed out in the last case, argued that this is all a discretionary regime. The entire purpose of this was to put this in the hands of district court judges, who the Supreme Court and this Court routinely say are best positioned to make these decisions. They're the people who actually make these decisions and impose sentences, one, in the first instance, but two, are able to determine if a particular person merits a reduction at this point. And so with that, if you take the government's position, it essentially vitiates a lot of the discretion that Congress placed in the hand of the district court. The government says that if Congress wanted – they essentially say that Congress could have used different statutory terms to say that anyone who was ever convicted of a cocaine-based offense is eligible. That is true, prior to the Fair Sentencing Act. They could have used those terms. At the same time, they could have also said that anyone who was convicted under B1A of less than 280 grams as alleged in the indictment is eligible, or B1B of less than at the time – sorry, less than at the time 5 grams is eligible for relief. So I think if you were looking at the equities of the case and if we're looking at the legislative history of the First Step Act, it's clear that the intent of Congress was to grant district court's discretion and to place people such as Mr. Foulkes in the position where, one, they're eligible for relief, but two, that decision then turns to the district court based on an individualized decision, based on the facts as presented, one, that he can review from the historical record, but two, that he can review based on the submissions at the time of the motion to reduce the sentence. The other point that I'd like to make, Your Honors, is to point out the procedural vehicle that's at issue in this case. We maintain and believe that Section 404 of the First Step Act is, in fact, an independent grant of authority akin to the relief that a district court has when correcting, modifying, or vacating a sentence under 2255, 28 U.S.C. 2241, as opposed to the very limited sentence modification proceedings authorized by 3582C2 when we're following court guidelines. The government wants to cabin First Step Act motions into that limited procedural same type of vehicle when, in fact, the only thing that limits a court's discretion by the plain terms of the First Step Act is whether or not they were convicted of an offense after August 3rd, 2010, and two, whether or not they've already asked for a sentence reduction under the First Step Act and it's been decided on the merits. That's it. So 3582C1B should be construed and considered as a limited restriction on the general rule that you cannot modify a sentence unless expressly permitted by statute. And we have expressed permission in another statute here, Section 404, which authorizes the district court, if they so desire, to conduct a plenary re-sentencing or to conduct some other limited procedure as the court deems appropriate in the case-to-case. Again, that's consistent with Congress's intent to make the First Step Act, Section 404 relief discretionary and place it in the hands of federal district courts to make individualized determinations. And with that, I preserve the remainder of my time for rebuttal unless there are any questions. Thank you, Counselor. Ms. Boyle? Now on the other side? Yes. Switch tables, Your Honor. May it please the Court, Counsel. My name is Katherine Boyle on behalf of the United States. Your Honors, since all three appeals today have been consolidated for purposes of argument date and involve the same issue, I'd just like to treat this as building on my prior argument rather than boring you all by repeating the same things. The same considerations that we discussed in United States v. Young are present here. The text and purpose of the statute demand the same conclusion in the appeal that the defendant is liable for a reduction. Here, and I want to discuss this in particular because Defense Counsel brought it up quite a bit in suggesting that it needs to be the statute of conviction in order to ensure there are no disparities between pre-fair sentencing act and post-fair sentencing act defendants. We believe that reading really misconstrues the text and if anything undermines the purpose of Section 404, which is meant to extend the benefits of the Fair Sentencing Act to defendants who were not able to benefit from it because they committed their offense beforehand and were sentenced beforehand. But nothing suggests that Congress contemplated the sort of asymmetry where defendants who were sentenced before the Fair Sentencing Act receive, are automatically eligible under B1A3 or B1B3, are automatically eligible for some sort of procedural windfall that the same defendant who committed the exact same violation factually was sentenced for following the enactment of the Fair Sentencing Act. And here, for example, Mr. Folks was charged with and pleaded guilty to a conspiracy that at the time involved more than 50 grams of crack cocaine. But as was made clear by the record, the court at sentencing found that it involved 8.4 kilograms of crack cocaine. And Mr. Folks himself acknowledged at his change of plea hearing and his written plea agreement that he had distributed 4.5 ounce quantities of crack cocaine on a regular basis to several individuals over I think about a six year period of conspiracy, which easily, let's say with the 4.5 ounce amount, if he had even distributed those amounts three times, it would be over the 280 threshold we're looking at with the changed statute threshold penalty in 841B1A. So it would not be fair for Mr. Folks who was involved in a conspiracy involving more than 280 grams of crack cocaine to have an opportunity for a reduction in his sentence that somebody who was charged for the same conduct post-2010, a conspiracy involving more than 280 grams of crack cocaine, would not have. That person can't go to a judge and say, Your Honor, I'd like you to consider me for a discretionary reduction. And we think that even the fact of that opportunity creates a disparity that Congress really didn't intend to have a reduction here. And the opposing counsel in these cases has suggested that this can be cured by judicial discretion, that the judge can then look at the circumstances of the case and say, Well, since you really did have more than 280 grams of crack cocaine, I'm going to decline to grant this reduction under Section 404. But that really undermines the significant weight this Court has placed on finality. It doesn't consider the fact that the procedural opportunity is in itself a windfall, even if the reduction is not granted. You can look, for example, at a defendant in 2005 who distributed more than a kilogram of crack cocaine and a defendant in 2015 who distributed more than a kilogram of crack cocaine. Both were sentenced under B1A. Both could get mandatory life sentences. Both committed the exact same conduct. And then you have the 2005 defendant under the defendant's theory being eligible for a discretionary reduction, whereas the person charged in 2015 would not. Well, in resentencing, would the Court have the same flexibility? Your Honor, we believe it wouldn't. The Fifth Circuit's already— It would or would not? It would not, Your Honor. The Fifth Circuit has already decided in United States v. Hagwood that a plenary resentencing should not occur, even if a defendant is eligible for the discretionary reduction. Really, our position is that all the Court is supposed to do there is sentence the defendant as if the Fair Sentencing Act—sorry, I've got two FSAs—as if the Fair Sentencing Act was committed. And that wouldn't allow for later changes that were not retroactive to guidelines and things like that, in our opinion, Your Honor. And that's what the Fifth Circuit has determined as well. Your Honor, there's been much criticism made by my opposing counsel in these cases here on our analogy to Section 3582c2. And we're not saying Section 3582c2 controls in this case. We believe that this is governed by 3582c1b. But we do think that, as an analogy, it's quite helpful. Under 3582c2, the Court looks at whether a defendant is eligible for a sentence reduction based on a retroactive amendment to a sentencing guideline. And the Court determines that they're not if the guideline range is unchanged. This shows that the Courts frequently—and they do this in 2255 and Saving Clause proceedings too—I'm sorry, Your Honor, do you have a question? No. Oh. I probably wouldn't be able to understand it if I did. I've been able to understand you very well, Your Honor. So we think it shows that this is not only done commonly, it's something that Courts are accustomed to doing and are good at doing, looking back at the record and deciding, for example, how much crack cocaine was involved in an offense. That's the exact assessment we're looking for here. And although 3582c2 doesn't control in this case, it is certainly a helpful area of the law to look to. On that issue of going to how much cocaine is at issue, obviously in the pre-sentence investigation report there's going to be either stipulation or at least some discussion with regard to that. The indictment itself, though, is going to at best have a range, right? Yes. So if we go to the indictment controls theory, that's not going to help us, right? Yes, Your Honor. And we think that the same issues we've identified in terms of the text of the statute and really the same issues we've identified in terms of the purpose of the statute, those same problems are presented with the indictment controls theory because that, too, is going to present issues of disparity between defendants who were sentenced before the Fair Sentencing Act and defendants who were sentenced after the Fair Sentencing Act. Not to mention, we think it's important, and I think some of the district court judges in these cases have pointed it out, prior to the Fair Sentencing Act, it was the practice of almost nearly all prosecutors to charge the statutory threshold in the indictment. So you wouldn't have seen, typically, an indictment that was charging, it would charge 50 grams if it was a B1A offense or it would charge 5 grams if it was a B1B offense. They wouldn't usually charge the exact amount involved in the offense. And that, again, shows, because that practice was so widespread, the potential disparity that would occur between pre-Fair Sentencing Act defendants and post-Fair Sentencing Act defendants. Your Honor, we also think that this Court's decision in United States v. Ousley is instructive here. That's a case where the defendant committed his offense before the enactment of the Fair Sentencing Act. He had two priors for felony drug offenses and he was convicted and sentenced to life after the Fair Sentencing Act in accordance with pre-Fair Sentencing Act penalties. This is before Dorsey had been decided, I think about 10 months before. But this Court found in that case that a resentencing was not merited because there was a special jury verdict that Mr. Ousley had possessed 579 grams of crack cocaine. So that's an instance also where the Court is looking at the actual conduct in determining whether the Fair Sentencing Act should be applied. Your Honor, I'm running a little low on time. I'd like to touch briefly on the issue of lenity, which has been brought up in Posing Counsel's brief. We don't believe the rule of lenity applies here. The rule of lenity is supposed to be used to interpret the substantive ambit of a criminal provision and the penalties they impose. A Section 404 defendant has already been deemed guilty, and this kind of sentencing reduction doesn't implicate the policy concerns on which the rule of lenity is based, which would be fair notice of the scope and magnitude of potential liability, and also deference to Congress, which is supposed to define criminal activity to reflect the moral condemnation of the community. And we also believe in light of the text and purpose of the statute, there's no grievous ambiguity in the First Step Act, as we've discussed. I see I don't have time. Thank you, Your Honor. Thank you, Goss. Your Honor, if I could make two key points. First, starting on disparities. The Supreme Court has made clear that whenever Congress legislates, especially in the area of criminal law, it always involves line drawing. Congress rarely, if ever, makes new changes in criminal law retroactively applicable. So the same was true when the Fair Sentencing Act originally applied, and that's what the Supreme Court said in Dorsey, that there will be disparities. But that alone is not enough to trump a textual interpretation of laws that Congress passed. And in fact, the First Step Act is a great example of how Congress also created disparities. If you look at the 924C anti-stacking provisions that are in the First Step Act, those only apply to new cases. So they don't apply to people retroactively right now. They don't apply to cases that are retroactively on collateral review. So the government wants to make a mountain out of the fact that some people are able to seek a reduced sentence under the First Step Act while others are not, even if they could theoretically have been indicted for more than 280 grants. That was a legislative decision that Congress made. And it's not the role of the courts to overturn that simply because it may be disagreed with on policy grounds. Second, the point I want to make about 3582C2, as opposing counsel tried to say, is analogous and we should look at. The reason that actual conduct and relevant conduct, for example, from the PSR are considered so heavily in those sentence modification proceedings is because we're looking to see if a guidelines amendment that's retroactively applicable to someone lowers their sentencing guideline range. So of course we have to look at what's in the PSR and the actual relevant conduct of someone in 3582C2 proceedings. In fact, that's what Congress did with the Fair Sentencing Act. But what Congress has not done here, and they made the decision distinctly not to do it, is to tie or instruct the Sentencing Commission to adopt lower guidelines implementing the required defendants to show that their guideline range somehow would have been reduced. And so there you would look at relevant conduct. Instead, what they said categorically is that if you have covered offense, if there's a violation of a federal criminal statute, the statutory penalties for which were reduced or modified by the Fair Sentencing Act of 2010. And we believe that the only reasonable interpretation of that text would be to hold that you look at a categorical analysis, similar to a Shepard's analysis, at what was alleged and the crime itself. Was there a cocaine-based violation of 841B1A or B1B? With that, Your Honor's... Is there any reason for remand for reconsideration? Your Honor, I think there could be in light of the Court's opinion on the eligibility determination. Yes, Your Honor. Okay. With that, Your Honor, there's no further questions I'd submit. Thank you, Counsel. Thank you. And the fifth case...